Catron, J.
delivered the opinion, of the court. Christopher Stump assigned to Robert Smiley ap open account *379 on Montgomery Bell (the defendant) in discharge of a debt due Smiley from Stump. Suit was brought in the David’ son county court, in the name of Stump against Bell, for the use of Smiley. Judgment was recovered against Bell in the county court. He, by certiorari, removed the cause into the circuit court. Whilst pending there, Stump died. Afterwards Robert Smiley filed his bill in equity, alleging that no one had administered on Stump’s estate, nor would probably do go, owing to its embarrassed situation; and that he would not administer, rov could this reasonably be required of him, for the reason that the administrator would be greatly harrassed by the numerous outstanding claims against Stump’s estate. After the bill was filed,Smiley died, and his administratrix revived this suit. Bell, in his answer,insists upon the want of jurisdiction in a court of equity to give complainant relief, amongst other matters.
Whether a bill in equity could he sustained, as between Stump and Bell, upon the account, rests upon facts. It is very doubtful from any thing appearing in the pleadings and proofs, whethefsuch mutual and complicated accounts existed on the respective sides as to give a court of equity original jurisdiction, by bill, as a substitute for the obsolete action of account. This doubt arises, taking the bill and answer together, but if the bill had been demurred to, it is very clear that no mutual dealings existed of a character to give a court of equity jurisdiction. The account exhib-. ited with the bill, shews only two payments, of $145 and $36, in castings, by Bell, and the balance is stated at $895, If a court of equity were to assume jurisdiction in such a case, there would be an end of the action of assumpsit in every instance where there had been a single payment on the part of the defendant, did the creditor choose to pro, ceed in equity. Bell, in his answer, claims further credits, but on the hearing below, gave no proof of any account on his part against Stump. This answer produces difficulties on the head of jurisdiction, and the court would encourage demurrers in such cases; this would reduce the expenses of litigation, be productive of despatch, and what is of still moth consequence, reduce the rules by which a court o S' *380 equity is governed to a science. The court would, however,. ^ .jncj¡ne¿ t0 dismiss the bill for want of jurisdiction, were proper parties before the court, upon the ground that the remedy is at law. (6 Ves. 136; 1 John. Ch. Rep. 463.)
The main question in the. cause is, can the court take jurisdiction, supposing the claim, as between Stump and Bell, was of an equitable nature?
It is urged for complainant, that the great difficulties imposed upon Smiley, owing to the very embarrassed situation of Stump’s estate, authorized him to seek his remedy in equity, there being none at law; and that his assignment of the account on Bell, gave him the benefit of this remedy in his own name, after Stump’s death. As between assignor and assignee of a chose in action, courts of equity have protected the rights of the latter against the acts of the former tending to deprive the assignee of such rights; but that a cause of action could be assigned, other than in cases expressly provided for by statute, is not believed to bo a position that can be maintained; nor is death an accident that will give jurisdiction to a court of equity, where the remedy is suspended by the death of him who had the right of action, and no impediment exists to obtaining administration. Jones v. Frost, Steadman and others, (3 Madx. Ch. Rep. 1, 7;) Lawe and others v. Tarley and others, (1 Madx. Ch. Rep. 101, 105;) Humphreys v. Humphreys, (3 P. Wins. Rep. 349; 1 Equ. Ca. Ab. 73; 6 Ves. 118, 119;)Zee v. The Bank of England, (8 Ves. 44.)
A receiver will be appointed until administration can be granted where it is in litigation, or other impediments exist, (1 Ves. & B. 85, 96; 1 Ball & B. 326.) But the complain-* ant did not come into court claiming relief upon this head of equitable jurisdiction; therefore the doctrine does not apply to the allegations in the bill. Many reasons obtain why the administrator of the deceased should be before the court, growing out of legal priorities in the distribution of assets, the impossibility of the court passing any decree which would be binding upon any future administrator of the assignor, Stump. Suppose some one were to administer upon h).s estate and revive the suit in the circuit court, or (if this *381 toulá not be done by reason of the abatement of the appeal) the judgment in the county court, and the defendant Bell, Were to plead in baf the recovery of the claim by the signee in a court of equity. Could not the administrator allege, and successfully, that his rights could not have been affected by such ex-parte decree; that he denied' any assignment had ever been made from Stump to Smiley of the account on Bell? There can be no doubt that this would be. a good reason why the plea of the former recovery in equity would be rejected, and Bell compelled again to pay the money. Hence, were this cause of equitable cognisance, it could not be proceeded in for want of proper parties being before the court: the equities between Stump’s and Smiley’s estates must be adjudicated upon, if a decree is given for the complainant; the court must judicially ascertain the Validity and existence of the assignment from Stump to Smiley, before any relief can be given'to complainant; this previous question it is impossible that the court should decide, unless Stump or his representatives were before the' court, and any decree made affecting this point, as above remarked, would be merely void, so far as Stump’s representatives might be interested to object to itat a future day, (6 Ves. 118.)
It is admitted that if complainant had any right to administer upon the estate of Stump, and had done so, that the' remedy would have been plain, and none of the foregoing inconveniences would have stood in the way. That Rob't. Smiley, or complainant, had a right to administer, there cari be no doubt. But it is contended thatit would be most un-' reasonable to require this, because of the very embarrassed situation of the estate of Stump.- According to this argument, whether the estate was much, or little embarrassed, of course would be a matter of fact, and judicially to be Inquired of, previous to the assumption of jurisdiction by a court of equity; if unreasonable that the complainant should administer, then the court would relieve; if reasonable, then the bill would be dismissed. To limit such a discretion in 6. chancellor, within any sensible rule, would be next to im-5 possible; aside from the considerations that it would pre *382 sent an issue disconnected with the merits of the cause, and most complicated in the details of proof to make it out. W hen adduced, the evidence might be very satisfactory to a timid mind; appalled by slight difficulties, but entirely unconvincing to the mind of a bold and energetic man: Hence every chancellor would be governed by his own estimate of the difficulties attending the administration, without any legal rule for his government. This court thinks there is no precedent which will warrant a court of equity to assume jurisdiction upon grounds loose and unsatisfactory as the foregoing, nor can such matters be drawn into controversy before the court. The remedy of the complainant, by the ordinary rules of the common and statute laws of the country, is simple, and for any thing this court can judicially know, unembarrassed. Had Smiley of the present complainant applied to the county court for administration upon the estate of Christopher Stump, it would of course have been granted to the applicant, or some other better entitled, who might have opposed it; when the suit in the-circuit court could have been proceeded in, or if Bell’s appeal had abated, the judgmént in the county court could have been revived and the debt collected; and when Smij ley’s administratrix could have availed herself of the account and claimed her priority over other creditors to this particular fund. Than her right to do so, there is nothing better settled; nor is there any thing standing in the way of this course of proceeding at this time. Strip this cause of the alleged facts, that Stump’s estate is much embarrassed with outstanding debts against it, and the possibility that the administration thereof would be attended with much trouble, and it presents the ordinary case of a creditor of a deceased debtor, when no one next of kin will administer; in such case can the creditor of the deceased proceed directly against a debtor of the deceased without administration upon the estate? That he cannot, is most certaim
The court have given more attention to this point, than they otherwise would have done, because it is the ground upon which the bill was filed, and the decree below must have proceeded — but we think in mistake*
Decree reversed without prejudice to rights of compita